# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARECONT VISION HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 18-11142 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket No. 14** |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507, BANKRUPTCY RULES 2002, 4001, 6004, AND 9014, AND LOCAL RULE 4001-2 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Arecont Vision, LLC, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things, entry of an interim order (an "Interim Order"):

      i.      Authorizing the Debtors to obtain postpetition financing, consisting of senior secured superpriority, multi-draw term loans (the "DIP Loan(s)", and together with all other obligations under the DIP Loan Documents (as defined below), the "DIP Obligations") to be

---

[1] The Debtors and the last four digits of their U.S. tax identification number are Arecont Vision Holdings, LLC (9187), Arecont Vision, LLC (1410), and Arecont Vision IC DISC (5376). The Debtors' noticing address in these chapter 11 cases is 425 Colorado Street, Suite 700, Glendale, CA 91205.

advanced and made available to the Debtors in the aggregate maximum principal amount of $4,000,000 (such amount, the "Committed Amount"; such facility, the "DIP Facility") from American General Life Insurance Company, American Home Assurance Company, The United States Life Insurance Company in the City of New York and The Variable Annuity Life Insurance Company (the "DIP Lenders"), consistent with the terms and conditions of the *Senior Secured, Super-Priority Debtor-In-Possession Credit and Security Agreement*, the form of which is attached hereto as **Exhibit A** (with such changes or amendments, if any, as were or may be made with the agreement of the DIP Lenders prior to or as a result of the Interim Hearing (as defined herein) and as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "DIP Credit Agreement"), and the Approved Budget (as defined below and together with the DIP Credit Agreement and any other document or instrument executed and/or delivered in connection with the DIP Facility, the "DIP Loan Documents");[2]

ii.      Authorizing the Debtors to execute and enter into the DIP Loan Documents and to perform all such other and further acts as may be required in connection with the DIP Loan Documents, including the DIP Obligations, and all instruments, security agreements, assignments, pledges, mortgages, reaffirmations and other documents referred to therein or requested by the DIP Lenders to give effect to the terms thereof;

iii.      Authorizing the Debtors to use proceeds of the DIP Facility as permitted in the DIP Loan Documents and in accordance with this Interim Order;

iv.      Authorizing the Debtors to grant, and granting superpriority administrative expense claims status pursuant to Bankruptcy Code § 364(c)(1) to the claims of Cortland Capital

---

[2] The initial Approved Budget is attached as Exhibit C to the DIP Credit Agreement.

Market Services LLC, as collateral agent for the DIP Facility (the "DIP Agent"), for the benefit of the DIP Lenders in respect of the DIP Obligations;

v.        Granting liens on and security interests in (the "DIP Liens") the Collateral (as such term is defined in the DIP Credit Agreement) (the "DIP Collateral") as follows: (a) pursuant to Bankruptcy Code §§ 364(c)(2) and (d), valid, perfected, enforceable and non-avoidable first priority priming liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors subject to specified permitted liens, but excluding on an interim basis proceeds of avoidance actions under chapter 5 of the Bankruptcy Code; and (b) pursuant to Bankruptcy Code § 364(c)(3), valid, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors that are subject to specified permitted liens, in each case on the terms set forth in the DIP Loan Documents;

vi.        Providing adequate protection to the Prepetition Lenders (as defined below) as set forth in this Interim Order;

vii.        Authorizing the Debtors to use Cash Collateral in which the Prepetition Senior Lenders have an interest pursuant to any Prepetition Loan Document (each as defined below) and granting adequate protection to the Prepetition Senior Lenders in connection therewith;

viii.        Vacating and modifying the automatic stay pursuant to Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the DIP Loan Documents;

ix.        Scheduling a final hearing (the "Final Hearing") to consider entry of a final order authorizing, among other things, the Debtors to obtain financing under the DIP Loan Documents; and

x.      Granting the Debtors such other and further relief as is just and proper.

The Court having held a hearing on the Motion on May 15, 2018 (the "Interim Hearing"); the Court having considered all objections, if any, to the Motion; and upon the record made (a) by the Motion and the exhibits attached thereto; and (b) at the Interim Hearing, and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND CONCLUDED THAT:**[3]

A.      On May 14, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      This Court has jurisdiction over the Bankruptcy Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* entered February 29, 2012, by the United States District Court for the District of Delaware. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has authority to enter this Interim Order consistent with Article III of the United States Constitution.

C.      Sufficient and adequate notice of the Motion and entry of this Interim Order has been given pursuant to Bankruptcy Code §§ 102(1) and 364(c) and (d) and Bankruptcy Rules 2002 and 4001(c) to all entities entitled thereto such that no other or further notice of the Motion or of the entry of this Interim Order need be provided to any entity.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. Pursuant to Bankruptcy Rule 7052, to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. Statements made by the Court from the bench during the Final Hearing shall constitute additional conclusions of law and findings of fact, as appropriate.

D.      Subject to Paragraph 20 of this Order, the Debtors admit, stipulate and agree that:

1.  As of the Petition Date, the Debtors, the financial institutions parties thereto from time to time as senior noteholders (the "Prepetition Senior Lenders"), and the financial institutions parties thereto from time to time as subordinated noteholders (the "Prepetition Subordinated Lenders" and, together with the Prepetition Senior Lenders, the "Prepetition Lenders") are parties to that Note Purchase Agreement, dated as of March 31, 2014 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Secured Note Agreement") and together with the other Note Documents (as defined in the Prepetition Secured Note Agreement) the "Prepetition Loan Documents").  The Prepetition Loan Documents evidence and govern the obligations of the Debtors for principal, accrued and unpaid interest, fees, costs, expenses, indemnities and other amounts arising under the Prepetition Loan Documents (the "Prepetition Obligations").  The Prepetition Obligations to the Prepetition Senior Lenders are secured by first priority liens and security interests (the "Prepetition Senior Liens") granted to U.S. Bank National Association (the "Prepetition Agent"), as first lien collateral agent for the benefit of itself and the Prepetition Senior Lenders, on the collateral described and defined in the Prepetition Loan Documents (the "Prepetition Collateral"), which includes cash collateral within the meaning of Bankruptcy Code § 363(a) ( "Cash Collateral").  The Prepetition Obligations to the Prepetition Subordinated Lenders are secured by second priority liens and security interests (the "Prepetition Subordinated Liens" and, together with the Prepetition Senior Liens, the "Prepetition Liens") granted to the Prepetition Agent, as second lien collateral

agent for the benefit of itself and the Prepetition Subordinated Lenders, on the Prepetition Collateral.

2.   As of the Petition Date, the Debtors are liable for payment of the Prepetition Obligations, and the Prepetition Obligations shall be an allowed secured claim in an amount not less than $73,200,000.00, exclusive of accrued and accruing interest, costs, expenses, Make-Whole Amount (as defined in the Prepetition Loan Documents), fees and other amounts owed to the Prepetition Agent and Prepetition Lenders.

3.   The Debtors further acknowledge, agree and stipulate that: (i) the Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Loan Documents; (ii) no offsets, defenses or counterclaims to the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Bankruptcy Code, under applicable nonbankruptcy law or otherwise; (iii) the Prepetition Liens are priority liens, subject only to the Permitted Existing Liens (as defined below); (iv) the Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Obligations or otherwise, against the Prepetition Agent, the Prepetition Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants,  predecessors in interest, successors and assigns.

4. The acknowledgement of the Debtors of the Prepetition Obligations and the rights, priorities and protections granted to the Prepetition Agent for the benefit of itself and the Prepetition Lenders pursuant to the Prepetition Loan Documents shall be deemed a timely filed proof of claim on behalf of the Prepetition Agent and the Prepetition Lenders in these Chapter 11 Cases and neither the Prepetition Agent nor the Prepetition Lender shall be required to file any additional proofs of claim with respect to the Prepetition Obligations.

E.     Prepetition Agent and Prepetition Lenders have consented to the terms of this Interim Order and are entitled to adequate protection as set forth herein pursuant to Bankruptcy Code §§ 361, 362, 363 and 364 for any diminution in the value of such interests in the Prepetition Collateral from and after the Petition Date.

F.     An immediate and ongoing need exists for the Debtors to use Cash Collateral and obtain the DIP Facility in order for the Debtors to pursue a sale of all or substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code (a "Section 363 Sale") and maximize the value of their business and assets as debtors in possession under chapter 11 of the Bankruptcy Code through, among other things: the orderly continuation of the operation of their business; maintenance of business relationships with vendors, suppliers and customers; paying payroll obligations; satisfaction of other working capital and operational needs; and achieving the milestones and accomplishing the other acts necessary to be in a position to consummate a Section 363 Sale. The Debtors do not have sufficient available resources of working capital to operate their business in these Chapter 11 Cases in the ordinary course without the use of Cash Collateral and/or postpetition financing. The Debtors' ability to maintain business relationships with vendors, to pay employees, and otherwise to fund operations is essential to the Debtors'

viability and preservation of the going-concern value of their business and successful reorganization.

G.     The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense, and the Debtors are unable to obtain the postpetition financing that they need on terms more favorable than those provided in the DIP Credit Agreement. Without limiting the foregoing, postpetition financing is not available to the Debtors without the Debtors granting to the DIP Agent, for the benefit of the DIP Lenders, the DIP Liens and the Super-Priority Claims (as defined below) provided under the DIP Credit Agreement and this Interim Order.

H.     The DIP Facility has been negotiated in good faith and at arms-length between the Debtors, the DIP Agent and the DIP Lenders. Any credit extended and loans made to the Debtors pursuant to the DIP Credit Agreement and this Interim Order shall be deemed to have been extended, issued, or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e), and the DIP Agent and the DIP Lenders are entitled to the protections of Bankruptcy Code § 364(e).

I.     The extension of credit under the DIP Facility is fair and reasonable and reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The DIP Agent and the DIP Lenders have provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens conveyed to, and the rights, protections, and benefits obtained by, the DIP Agent and the DIP Lenders under this Interim Order and under the DIP Loan Documents.

J.     Entry of this Interim Order is in the best interests of the Debtors' estates and creditors because its implementation, among other things, will allow for the availability to the

Debtors of working capital and will enhance the Debtors' prospects for a successful going-concern sale and reorganization.

K.     The DIP Lenders are willing to provide the DIP Facility to the Debtors, but only upon the terms and conditions set forth in the DIP Loan Documents and this Interim Order. Absent entry of this Interim Order, the DIP Lenders would not provide the DIP Facility.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.     The Motion is GRANTED as set forth herein.

2.     Any objections to the Motion or to entry of this Interim Order that have not been withdrawn or otherwise resolved are hereby OVERRULED.

3.     The execution and delivery of the DIP Credit Agreement and other DIP Loan Documents by the Debtors is authorized and approved.  Further, the Debtors are expressly authorized and directed to (a) execute and deliver to the DIP Agent and/or the DIP Lenders, as applicable, any other document of any kind required to be executed and delivered in connection with the DIP Credit Agreement and the other DIP Loan Documents; (b) take any action to carry out the intent and purpose of the DIP Credit Agreement and other DIP Loan Documents, including all such actions to create, protect, and perfect the DIP Liens in favor of the DIP Agent, and (c) comply with and perform all of the terms and conditions contained in the DIP Credit Agreement and other DIP Loan Documents.  Upon execution and delivery of the DIP Loan Documents and entry of this Interim Order, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto and their respective estates and any successor trustee, in accordance with the terms thereof.  No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy

Code or applicable nonbankruptcy law, except to the extent this Order expressly provides otherwise.

4.      The Debtors are expressly authorized to borrow from the DIP Lenders the DIP Loans in the maximum principal amount not to exceed $4,000,000 *provided that* until entry of a Final Order acceptable to the DIP Agent and the DIP Lenders, the maximum principal amount of the DIP Loans outstanding at any time shall not exceed $2,750,000, on the terms and conditions set forth in the DIP Loan Documents and this Interim Order.

5.      The DIP Obligations are subject to (i) a Facility Fee (as defined in the DIP Credit Agreement) of $80,000 (2.0%) and (ii) interest ("Interest") at the annual rate of 8.0% per annum. Accrued Interest earned shall be payable monthly in cash. Principal and accrued, unpaid Interest will be payable at the Maturity Date (as defined below). Upon the closing of the DIP Facility, the Facility Fee shall accrue to the benefit of the DIP Lenders and shall be fully earned and payable in cash at closing. The fees and expenses relating to the DIP Facility, including the Facility Fee, are authorized and approved for payment without further order of Court. In addition to the Facility Fee, the Debtors are authorized and directed to pay the reasonable and documented costs and expenses of the DIP Agent and the DIP Lenders associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto, as well as proceedings before the Court relating to the DIP Facility (including the reasonable fees, disbursements and other charges of counsel, financial advisors and other professionals and advisors) (the "DIP Lender Expenses"). The DIP Agent and the DIP Lenders shall provide copies of their respective invoices reflecting their professional costs, fees, and expenses incurred in connection with the DIP Loan Documents (edited to delete any attorney-client communications, attorney work product, or other

confidential information) to the Debtors, the United States Trustee and any statutory committee of unsecured creditors. Any such party may object to the reasonableness of any such costs, fees, and expenses. However, any such objection shall be forever waived and barred, and the Debtors shall promptly pay such invoiced DIP Lender Expenses, unless, within ten (10) calendar days of receipt of the invoice to which the objection relates or such later date as agreed to by the DIP Lenders: (1) the objection is served upon the DIP Lenders and their counsel; and (2) the objection describes with particularity the items or categories of fees, costs, and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs, and expenses. To the extent such objection cannot be resolved, the objection shall be filed with the Court and set for a hearing. Any objection to the fees, costs, and expenses set forth on any such invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs, and expenses which are the subject of such objection. The disallowance of any such fees and expenses shall not affect the DIP Lenders' right to collect such amounts from any person or entity other than the Debtors.

6.    The DIP Lender Expenses are not subject to the provisions of sections 327, 328, 329, 330, or 331 of the Bankruptcy Code and will be paid pursuant to the DIP Credit Agreement without further order of this Court, except in the event the Court is required to adjudicate a dispute relating to payment of the DIP Lender Expenses.

7.    The Debtors are hereby authorized to use Cash Collateral and proceeds of the DIP Loans in accordance with the budget approved by the DIP Lenders (the "Approved Budget"). The initial Approved Budget is attached as Exhibit C to the DIP Credit Agreement. The Debtors shall provide (i) prior to 5:00 p.m. (Pacific time) on the fourth business day of the calendar week following the Petition Date and on such business day of every calendar week thereafter, an

updated cash flow projection covering the 9-week period after the week's end of the week in which such day occurs, in form and substance reasonably acceptable to the Lender, (ii) prior to 5:00 p.m. (Pacific time) on the fourth business day of every calendar week following the Petition Date, a budget compliance report showing all variances by line-item on a week-by-week and cumulative basis from the amounts set forth in the Approved Budget for such period, together with a certification from the chief financial officer or chief restructuring officer of each of the Debtors, certifying that no deviation from the Approved Budget for such period in excess of the permitted deviations set forth in the DIP Credit Agreement has occurred, and (iii) such other information (including access to the Debtors' books, records, personnel and advisors) as the DIP Lenders may reasonably request.  The Approved Budget may be updated, modified or supplemented (with the consent of the Lenders and/or at the reasonable request of the Lenders) from time to time, and each such updated, modified or supplemented budget shall be approved by, and in form and substance satisfactory to, the Lenders and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed an Approved Budget; provided, that during the fifth (5th) week of the initial Approved Budget (and the fifth (5th) week of each successive Approved Budget thereafter), the Borrowers shall submit a budget for the next successive nine week period to the Lenders, which budget shall be in form and substance acceptable to the Lenders, and approved by the Lenders; provided, further, that in the event that the Lenders cannot, while acting in good faith, agree as to an updated, modified or supplemented budget, the most recent Approved Budget shall remain in effect.

8.      Subject to the Carve-Out, the Debtors are authorized and directed to deposit all Cash Proceeds, regardless of the source of such Cash Proceeds, necessary to make any payment when due of any DIP Obligations under the DIP Loan Documents that is now or hereafter in the

Debtors' possession or under its control with the DIP Agent in accordance with Section 2.4(e) of the DIP Credit Agreement. The DIP Agent shall thereafter apply such Cash Proceeds against the DIP Obligations then due and owing. As used herein, "Cash Proceeds" means Cash Collateral and other cash coming into the possession or control of the Debtors, including arising from the collection or other conversion to cash of the DIP Collateral, including cash from the sale of inventory and the collection of accounts receivable, tax refunds, deposits subject to setoff, and insurance proceeds. For the avoidance of doubt, the Debtors shall maintain in the bank account designated in the DIP Credit Agreement any Cash Proceeds not utilized to repay the DIP Obligations then due and owing and the Debtors shall be authorized to use such excess Cash Proceeds consistent with the Approved Budget.

9. Without further order of the Court, upon an Event of Default, the DIP Agent (acting at the direction of the DIP Lenders) may direct the Debtors to (or the DIP Lenders may directly) instruct all account debtors of existing and future accounts receivable included in the DIP Collateral to make payments directly into accounts satisfactory to the DIP Lenders, in which event all such Cash Proceeds shall be applied in accordance with the DIP Loan Documents.

10. The DIP Agent (acting at the direction of the DIP Lenders) is authorized to collect upon, convert to Cash Proceeds, and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under their control which constitute DIP Collateral or proceeds of DIP Collateral, subject to the provisions hereof.

11. Subject to the Carve-Out, the Debtors will not use or seek to use Cash Proceeds, unless, in addition to the satisfaction of all requirements of section 363 of the Bankruptcy Code for the use of such Cash Proceeds, the Debtors obtain an order of the Court approving such use and: (i) the DIP Lenders have consented to such order; (ii) at the time of the entry of such an

order, there are no DIP Obligations outstanding, and no obligation of the DIP Lenders to extend additional DIP Loans; or (iii) such Cash Proceeds are first used to immediately and indefeasibly pay the DIP Obligations in cash in full.

12.     As security for the DIP Obligations, and as provided in the DIP Loan Documents and this Interim Order, the DIP Agent, for the benefit of the DIP Lenders, shall have (effective and continuing, without the necessity of the execution, filing, and/or recordation of mortgages, security agreements, control agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements, or otherwise) (a) pursuant to Bankruptcy Code §§ 364(c)(2), 364(c)(3) and 364(d)(1), valid, binding, fully perfected, enforceable and non-avoidable first priority priming liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors that is not otherwise subject to the Permitted Existing Liens (as defined below), including, but not limited to, the Prepetition Collateral and avoidance actions under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions"), and any and all rents, issues, products, offspring, proceeds and profits generated by any item of such collateral, without the necessity of any further action of any kind or nature by the DIP Lenders in order to claim or perfect such rents, issues, products, offspring, proceeds and/or profits (collectively, the "DIP Collateral"); provided, that the DIP Liens (as defined below) shall not attach to the Avoidance Actions or the proceeds thereof prior to the Final Hearing; and (b) pursuant to Bankruptcy Code § 364(c)(3), valid, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors that are subject to valid and properly-perfected, non-avoidable liens and security interests in existence as of the Petition Date other than the Prepetition Liens (the "Permitted Existing Liens") and any and all rents, issues, products, offspring, proceeds and

profits generated by any item of such collateral, without the necessity of any further action of any kind or nature by the DIP Lenders in order to claim or perfect such rents, issues, products, offspring, proceeds and/or profits (together, the "DIP Liens"). The DIP Liens are senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, subject only to (x) the Carve-Out (as defined below), and (y) the Permitted Existing Liens.

13.     This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens granted herein, effective as of the Petition Date, without any further action by Debtors or DIP Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages, certificates or other agreements, documents or instruments.  Notwithstanding the foregoing, the Debtors shall execute and deliver to the DIP Agent such financing statements, mortgages, instruments, certificates, agreements and other documents as the DIP Agent may reasonably request from time to time to provide further evidence of the perfection of the DIP Liens, and any such documents filed by the DIP Agent shall be deemed filed as of the Petition Date.

14.     In accordance with Bankruptcy Code § 364(c)(1), to the extent the DIP Facility Liens do not satisfy the DIP Obligations, the DIP Obligations shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d),  or 726 (to the extent permitted by law), and/or 364(c)(1), and any other provision of the Bankruptcy Code (including, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code), and shall at all times be senior to the rights of the Debtors, any chapter 11 trustee, any chapter 7 trustee or any other creditor in the Bankruptcy Cases (the "Super-Priority Claims"); provided however, that

the Super-Priority Claims shall be subject to the Carve-Out and shall exclude the Avoidance Actions and the proceeds thereof until entry of a Final Order.

15.     Pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d), as adequate protection of the interests of the Prepetition Senior Lenders in the Prepetition Collateral and solely to the extent of any diminution in the value of the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, for the benefit of itself and the Prepetition Senior Lenders, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "Senior Adequate Protection Liens"). The Senior Adequate Protection Liens: (1) are and shall be in addition to the Prepetition Senior Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Prepetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall be subject only to the DIP Facility Liens, the Carve-Out and Permitted Existing Liens; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Chapter 11 Cases. Notwithstanding the foregoing, the Debtors are authorized to and shall execute and deliver to the Prepetition Agent such financing statements, mortgages, instruments and other documents as the Prepetition Agent may reasonably request from time to time to provide further evidence of the perfection of the Senior Adequate Protection Liens. If and to the extent the adequate protection of the interests of Prepetition Agent and Prepetition Senior Lenders in the DIP Collateral granted pursuant to this Order proves insufficient, the Prepetition Agent and Prepetition Senior Lenders shall have an allowed claim under Bankruptcy Code § 507(b), subject to the Super-Priority Claims and the Carve-Out, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Chapter 11 Cases (other than DIP Agent's and DIP

Lenders' claims under Bankruptcy Code § 364) that are incurred under any provision of the Bankruptcy Code; and (2) the claims of any other party in interest under Bankruptcy Code § 507(b) (the "Senior Adequate Protection Super-Priority Claims"); provided however, that the Senior Adequate Protection Super-Priority Claims and Senior Adequate Protection Liens shall exclude the Avoidance Actions and the proceeds thereof until entry of a Final Order.

16.    Pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d), as adequate protection of the interests of the Prepetition Subordinated Lenders in the Prepetition Collateral against any diminution in the value of the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, for the benefit of itself and the Prepetition Subordinated Lenders, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "Subordinated Adequate Protection Liens" and, together with the Senior Adequate Protection Liens, the "Adequate Protection Liens").   The Subordinated Adequate Protection Liens: (1) are and shall be in addition to the Prepetition Subordinated Liens; (2) are and shall be properly perfected, valid and  enforceable liens without any further action by Debtors or Prepetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall be subject only to the DIP Facility Liens, the Carve-Out, the Permitted Existing Liens and the Senior Adequate Protection Liens; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Chapter 11 Cases.  Notwithstanding the foregoing, the Debtors are authorized to and shall execute and deliver to Prepetition Agent such financing statements, mortgages, instruments and other documents as Prepetition Agent may reasonably request from time to time to provide further evidence of the perfection of the Subordinated Adequate Protection Liens.  If and to the extent the adequate protection of the interests of

Prepetition Agent and Prepetition Subordinated Lenders in the DIP Collateral granted pursuant to this Order proves insufficient, Prepetition Agent and Prepetition Subordinated Lenders shall have an allowed claim under Bankruptcy Code § 507(b), subject to the Super-Priority Claims, the Carve-Out and the Senior Adequate Protection Super-Priority Claims, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Chapter 11 Cases (other than DIP Agent's and DIP Lenders' claims under Bankruptcy Code § 364) that are incurred under any provision of the Bankruptcy Code; and (2) the claims of any other party in interest under Bankruptcy Code § 507(b) (the "Subordinated Adequate Protection Super-Priority Claims" and, together with the Senior Adequate Protection Super-Priority Claims, the "Adequate Protection Super-Priority Claims"); provided however, that the Subordinated Adequate Protection Super-Priority Claims and the Subordinated Adequate Protection Liens shall exclude the Avoidance Actions and the proceeds thereof until entry of a Final Order.

17. While any portion of the DIP Obligations remains unpaid or any of the DIP Documentation remains in effect, the Debtors shall not seek entry of any order approving or authorizing (under Bankruptcy Code §§ 105 or 364, or otherwise) (a) the granting of any lien or security interest in any of the DIP Collateral in favor of any party other than the DIP Agent or the DIP Lenders or (b) the obtaining of credit or the incurring of indebtedness that is entitled to superpriority administrative status, in either case *pari passu* with or superior to that granted to the DIP Agent or the DIP Lenders pursuant to this Interim Order, unless, in connection with any transaction cited in clause (a) or (b) of this Paragraph, such request by the Debtors seeks to authorize and direct that the full amount of the DIP Obligations shall first be paid indefeasibly and in full.

18. The DIP Agent's and the DIP Lenders' liens, claims and security interests in the DIP Collateral and their Super-Priority Claim, and the Prepetition Agent's and Prepetition Lenders' liens, claims and security interests in the Prepetition Collateral, the Adequate Protection Liens, and the Adequate Protection Super-Priority Claim, shall, in each instance, be subject only to the Permitted Existing Liens and the right to payment of the following (the "Carve-Out"):

a. All reasonable fees and expenses up to $100,000 incurred by a trustee appointed under Bankruptcy Code § 726(b)

b. Statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

c. Fees payable to the Clerk of this Court;

d. Subject to the terms and conditions of this Interim Order, (i) the unpaid outstanding reasonable fees and expenses actually incurred on or after the Petition Date and prior to the Carve-Out Trigger Date (as defined below), and approved and allowed by a final order of the Court pursuant to Bankruptcy Code §§ 326, 328, 330 or 331 by attorneys, accountants and other professionals retained by the Debtors and any Committee under Bankruptcy Code § 327 or 1103(a) (collectively, the "Professionals"), in an amount not to exceed the amounts set forth for each such Professional (on a Professional-by-Professional basis) for the periods prior to the Carve-Out Trigger Date in the Approved Budget, and (ii) the reasonable fees and expenses actually incurred, and approved and allowed by a final order of the Court pursuant to Bankruptcy Code §§ 326, 328, 330 or 331 of the Bankruptcy Code, by the Professionals after the Carve-Out Trigger Date in an aggregate sum not to exceed $150,000 for any Debtor Professionals (excluding any monthly fees due to Imperial Capital, LLC) and $50,000 for any Committee Professionals plus any fees due to Imperial

19

Capital, LLC under their engagement letter with the Debtors whenever incurred (the "Professional Carve-Out Cap"). The "Carve-Out Trigger Date" means the date when written notice is provided by the DIP Agent to the Debtors, or their lead counsel, the United States Trustee and lead counsel to any official committee of unsecured creditors appointed in these Bankruptcy Cases (a "Committee") (if a Committee has been appointed) identifying an Event of Default.

Any payment made after the Carve-Out Trigger Date (in respect of fees and expenses incurred after the Carve-Out Trigger Date) shall reduce the Professional Carve-Out Cap on a dollar for dollar basis. Following the occurrence of the Carve-Out Trigger Date, fees and expenses in the amount specified in the Approved Budget for the Professionals may be funded to a trust account of the Debtors' counsel and distributed to such Professionals once such fees and expenses are allowed by the Bankruptcy Court. Notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Facility or Cash Collateral may be used (i) to investigate (other than by a Committee, subject to a cap of $25,000, and further subject to the limitations set forth in Paragraph 20 of this Interim Order) or challenge in any respect the validity, perfection priority, extent or enforceability of the Prepetition Loan Documents or the Prepetition Liens; (ii) to delay, challenge or impede any rights of the DIP Agent and DIP Lenders under any of the DIP Loan Documents or this Interim Order; or (iii) to pursue claims or causes of action of any kind against the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders in their respective capacities as agents or lenders under any of the DIP Loan Documents or the Prepetition Loan Documents, as the case may be.

19.     None of the DIP Loans, proceeds thereof, or DIP Collateral may be used to fund, directly or indirectly, any effort to: (a) object to or contest in any manner, or raise any defenses

to the validity, perfection, priority, or enforceability of the DIP Obligations owing to the DIP Lenders or the DIP Facility Liens in favor of the DIP Lenders securing such DIP Obligations; or (b) assert any claims or causes of action of any type against the DIP Lenders or DIP Agent, including, without limitation, any avoidance actions under Chapter 5 of the Bankruptcy Code, or any claim or cause of action under the DIP Facility against the DIP Lenders or DIP Agent.

20.     Any action, claim or defense  (hereinafter, an "Prepetition Debt Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, subordination, disgorgement,  cure, reinstatement or claim of any kind: (a) the existence, validity, nonavoidability,  priority or amount of the Prepetition Obligations,  or (b) the extent, legality, validity, priority, perfection, nonavoidability  or enforceability of the Prepetition Liens, shall be filed with the Court (x) if a Committee is appointed by the United States Trustee, by such Committee within sixty (60) days from the date of appointment of the Committee, or (y) by any other party in interest with requisite standing within seventy five (75) days from the date of entry of this Interim Order, in each of clauses (x) and (y)  as may be extended, in writing, by the Prepetition Agent (at the direction of the Prepetition Lenders in their sole discretion) (the "Challenge Deadline").  Notwithstanding the foregoing, if a chapter 7 or 11 trustee is appointed prior to the expiration of the Challenge Deadline, he or she shall have until the later of the expiration of the Challenge Deadline or 10 days from the date of appointment to assert a Prepetition Debt Objection, subject to extension by the Court for cause.  If any such Prepetition Debt Objection is timely filed and successfully pursued, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Prepetition Obligations or the Prepetition Liens.  If no Prepetition Debt Objection is timely filed, or if a Prepetition Debt Objection is timely filed but denied, (a) the

Prepetition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, avoidance, subordination, deduction, cure, reinstatement or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Liens shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Existing Liens, the Carve-Out and the DIP Liens, and (b) the Prepetition Agent, the Prepetition Lenders and each of their agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Loan Documents and shall not be subject to any further objection or challenge by any party at any time.

21.    [Reserved].

22.    The DIP Agent, at its election, is authorized to apply all Cash Proceeds (to the extent any payment is due and owing with respect to any DIP Obligations under the DIP Loan Documents) now or hereafter coming into the DIP Agent's possession or control to payment of the DIP Obligations in accordance with the terms of the DIP Credit Agreement. All such applications shall be final and not subject to challenge by any person, including any trustee or Committee.

23.    It shall constitute an Event of Default under the DIP Obligations if the Debtors do not comply with the following milestones (the "Case Milestones"): (i) on or before a date that is 21 days after the Petition Date, the Debtors shall obtain entry of an order acceptable to the Agent and the Lenders approving with respect to a 363 Sale, bid procedures, which shall provide that the DIP Lenders and the Prepetition Lenders are deemed qualified bidders in such Section 363 Sale; (ii) on or before a date that is 30 days after the Petition Date, the Debtors shall obtain entry

of an order of the Bankruptcy Court, in form and substance acceptable to the DIP Agent and the DIP Lenders, in their reasonable discretion, approving the DIP Facility on a final basis (the "Final Order"); (iii) [Reserved]; (iv) on or before a date that is 50 days after the Petition Date, all qualifying bids in connection with the Section 363 Sale shall be submitted to the Debtors, the DIP Agent and the DIP Lenders and the Debtors shall have received at least one qualifying bid, including any stalking horse bid, the terms of which shall be acceptable to the DIP Lenders; (v) on or before a date that is 55 days after the Petition Date, the Debtors shall conduct an auction (the "Auction") to determine the highest or otherwise best bid for a Section 363 Sale, in consultation with the DIP Agent and DIP Lenders, and at the conclusion of the auction, the Debtors shall declare a winning bidder; (vi) on or before the date which is the 3 days after the conclusion of the Auction, the Debtors shall obtain entry of an order approving such Section 363 Sale to the successful bidder, which order shall be in form and substance acceptable to the DIP Agent and DIP Lenders (the "Sale Order"); and (vii) on or before a day that is 15 days after entry of the Sale Order, the Debtors shall cause such Section 363 Sale to be substantially consummated and indefeasibly and finally pay the DIP Obligations, any remaining Prepetition Obligations (to the extent of available funds), and all other obligations to the DIP Lenders, whether arising prior to, on, or after the Petition Date, in full, in cash, at the closing of the Section 363 Sale.

24.     The DIP Facility shall terminate and the DIP Loans and all other DIP Obligations shall mature and be due and owing, upon the DIP Agent's and the DIP Lender's election, at the earliest to occur of (such date, the "Maturity Date"): (a) the date on which the DIP Agent provides written notice to the Debtors, counsel to the United States Trustee and counsel for any Committee of the occurrence of an Event of Default under the DIP Facility; (b) the date of the acceleration of any outstanding extension of credit under the DIP Facility; (c) the effective date

of a confirmed plan in any of the Chapter 11 Cases; (d) the date of consummation of a Section 363 Sale or any other sale of all or substantially all assets in any of the Chapter 11 Cases; (e) the entry of an order converting any of the Chapter 11 Cases to a case or cases under chapter 7 of the Bankruptcy Code; (f) the entry of an order dismissing any of the Chapter 11 Cases; (g) the entry of an order appointing a chapter 11 trustee or an examiner with expanded powers in any of the Chapter 11 Cases; (h) the failure to comply with any of the Case Milestones; (i) the failure of the Debtors to obtain entry of the Final Order within thirty (30) days following the Petition Date; (k) the date of the commencement of the Final Hearing, if this Interim Order is modified at the Final Hearing in a manner unacceptable to the Lenders, in their sole discretion, and (k) 180 days after the Petition Date.

25.     On the fifth (5th) business day after the Maturity Date, at the DIP Agent's election without further order of the Court and subject to providing written notice to counsel to the Debtors, the Office of the United States Trustee, and counsel to the Committee, the DIP Agent and the DIP Lenders shall have automatic and immediate relief from the automatic stay with respect to the DIP Collateral (without regard to the passage of time provided for in Fed. R. Bankr, P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Prepetition Loan Documents, the DIP Loan Documents and applicable nonbankruptcy law.   Notwithstanding the foregoing, during such five (5) business day period following the Maturity Date, the Debtors may seek an order of this Court (i) determining that an Event of Default alleged to have given rise to the Maturity Date did not occur or (ii) providing other appropriate relief; provided, however, that during such five (5) business day period, DIP Lenders shall have no obligation to advance DIP Loans to the Debtors.

26.     The Debtors shall indemnify and hold harmless the DIP Agent and the DIP Lenders, and each of their respective partners, members, officers, directors, employees, affiliates, successors, assigns, agents, counsel and other advisors (collectively, the "Indemnified Parties") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and expenses of counsel) that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or by reason of, or in connection with the preparation for a defense of, any investigation, litigation or proceeding arising out of, related to or in connection with (a) the DIP Facility, the transactions contemplated thereby and in the DIP Loan Documents, and any use made or proposed to be made with the proceeds thereof and (b) the Chapter 11 Cases.

27.     The automatic stay imposed by Bankruptcy Code § 362(a) is hereby modified, to the extent necessary, to implement and effectuate the terms and conditions of this Interim Order.

28.     The Debtors are authorized to perform all acts and execute and comply with the terms of such other documents, instruments, and agreements in addition to the DIP Documentation, as the DIP Lenders may reasonably require, as evidence of and for the protection of the DIP Obligations, or which otherwise may be deemed reasonably necessary by the DIP Lenders to effectuate the terms and conditions of this Interim Order and the DIP Loan Documents. The Debtors and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any non-material modifications of the DIP Loan Documents without further order of this Court.

29.     Upon the indefeasible payment in full in cash, and the termination of, the DIP Facility, the Debtors shall execute and deliver in favor of the DIP Agent and the DIP Lenders a

valid and binding termination and release agreement, in form and substance acceptable to the DIP Agent and the DIP Lenders.

30.     Subject to entry of the Final Order, except for the Carve-Out, neither the Debtor nor any estate representative (including any Trustee) will invoke or seek to invoke the surcharge provisions of section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code (including, without limitation, the "equities of the case" exception under section 552(b) of the Bankruptcy Code), or any other legal or equitable doctrine (including, without limitation, unjust enrichment) upon the DIP Agent, the DIP Lenders, or any of the DIP Collateral for the benefit of any party in interest, including any Debtor, any Committee, any trustee, or any professionals engaged by the foregoing.

31.     By executing the DIP Loan Documents or taking any actions pursuant to this Interim Order or the Final Order, the DIP Lenders shall not: (1) be deemed to be in control of the operations or liquidation of the Debtors; or (2) be deemed to be acting as a "responsible person" with respect to the operation, management, or liquidation of the Debtors

32.     Subject to entry of the Final Order, neither the DIP Lenders nor the Prepetition Lenders shall be subject to the equitable doctrine of marshaling or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

33.     Neither the DIP Agent, DIP Lenders nor the Prepetition Lenders shall be required to file any proof of claim in the Cases for any claim under the DIP Loan Documents or the Prepetition Loan Documents, as applicable, or for any claim allowed herein.

34.     Unless the DIP Lenders consent thereto, no order shall be entered confirming a plan in these Cases unless such order provides for the indefeasible and final payment of the DIP

Obligations in full in cash on the earlier of: (1) the effective date thereof; and (2) the Maturity Date.

35.     The DIP Agent's or DIP Lenders' failure, at any time or times hereafter, to require strict performance by the Debtors (or by any trustee) of any provision of this Order or the DIP Loan Documents shall not waive, affect, or diminish any right of the DIP Agent or DIP Lenders thereafter to demand strict compliance and performance therewith. No delay on the part of the DIP Agent or DIP Lenders in the exercise of any right or remedy under this Order, the DIP Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law shall preclude any other or further exercise of any right or remedy. Neither the DIP Agent nor the DIP Lenders shall be deemed to have suspended or waived any of their rights or remedies under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of such party, and directed to the Debtors.

36.     Any stay, modification, reversal, or vacation of this Interim Order shall not affect the validity and enforceability of any DIP Obligations of the Debtors to the DIP Agent and the DIP Lenders incurred pursuant to this Interim Order or the validity, priority, or enforceability of any of the DIP Liens and Super-Priority Claims granted to the DIP Agent and the DIP Lenders and the Adequate Protection Liens under this Interim Order. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Liens and Super-Priority Claims granted under this Interim Order, the DIP Loans made pursuant to this Interim Order in respect of the DIP Credit Agreement, and all DIP Obligations incurred by the Debtors pursuant hereto and pursuant to the terms of the DIP Loan Documents prior to the effective date of any such stay, modification, reversal, or vacation shall be governed in all respects by the original provisions of this Interim

Order, and the DIP Agent and the DIP Lenders shall be entitled to all the rights, privileges, and benefits, including, without limitation, the DIP Liens, and priorities granted herein with respect to all such DIP Obligations.

37.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in the Chapter 11 Cases (and, to the extent not satisfied in full, the DIP Obligations shall not be discharged by the entry of any such order, notwithstanding Bankruptcy Code § 1141(d)); (b) converting the Chapter 11 Cases to chapter 7 cases; (c) appointing a chapter 11 trustee, or (d) dismissing the Chapter 11 Cases.  The terms and provisions of this Interim Order as well as the Super-Priority Claims and DIP Liens granted pursuant to this Interim Order and the DIP Loan Documents shall continue in full force and effect notwithstanding the entry of such order, and such Super-Priority Claims and DIP Liens shall maintain their priority as provided by this Interim Order until all of the DIP Obligations are paid indefeasibly and in full.

38.     The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Debtors, and their respective successors and assigns, including any trustee appointed or elected in the Bankruptcy Case, whether under chapter 11 or chapter 7.

39.     If there is any inconsistency between the terms of the DIP Loan Documents and the provisions of this Interim Order, the provisions of this Interim Order shall control to the extent of such inconsistency.

40.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be valid, take full effect, and be enforceable

immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Interim Order; and any stay of the effectiveness of this Interim Order that might otherwise apply is hereby waived for cause shown.

41.     A hearing to consider entry of the Final Order and final approval of the DIP Credit Facility (the "Final Hearing") is scheduled for June _8_, 2018, at _2:00 p_.m. before Hon. Christopher S. Sontchi, in Courtroom #6, 5th Floor, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19081.   Within two (2) business days following entry of this Order, the Debtors shall serve by United States mail, first-class postage prepaid, notice of entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of the Interim Order and the Motion, on (a) the parties having been given notice of the Interim Hearing, (b) any party which has filed prior to such date a request for notices with this Court, and (c) counsel for any Committee (if and when appointed). The Final Hearing Notice shall state that any party-in-interest objecting to the entry of the proposed Final Order shall file written objections with the Court no later than June _1_, 2018, at 4:00 p.m. (prevailing Eastern time), which objections shall be served so as to be actually received on or before such date on: (a) proposed counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Ira D. Kharasch, Esq. (ikharasch@pszjlaw.com) and James E. O'Neill (joneill@pszjlaw.com); (b) counsel for the Committee, (c) counsel to the DIP Lenders, Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, DE 19801, Attn:   Robert J. Dehney (rdehney@mnat.com) and Baker Botts, L.L.P., 30 Rockefeller Plaza, New York, NY 10112-4498, Attn: Emanuel C. Grillo, Esq. (emanuel.grillo@bakerbotts.com); and (d) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn:   Benjamin Hackman.   The Final

Hearing may be continued from time to time without further notice other than given in open court.

      42.    The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: _____May 15_____, 2018

THE HONORABLE CHRISTOPER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE