# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ARECONT VISION HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11142 (CSS)<br><br>Jointly Administered<br><br>Bid Procedures Obj. Deadline: June 1, 2018 at 4:00 p.m.<br>Bid Procedures Hearing: June 8, 2018 at 2:00 p.m.<br><br>Related to Docket No. 62 |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES WITH RESPECT TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)(A) AUTHORIZING ENTRY INTO THE ASSET PURCHASE AGREEMENT WITH RESPECT TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE AND APPROVE THE FORM AND MANNER OF NOTICES RELATED THERETO, (D) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (E) APPROVING CERTAIN BREAKUP FEE AND EXPENSE REIMBURSEMENT PROVISIONS; (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND OTHER INTERESTS, AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES; AND (III) GRANTING RELATED RELIEF**

Federal Insurance Company and its affiliates (together with each of their successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this reservation of rights (the "Reservation of Rights") with respect to the Debtors' Motion For Entry Of An Order (I)(A) Authorizing Entry Into The Asset Purchase Agreement With Respect To The Sale Of Substantially All Of The Debtors' Assets, (B) Approving Bid Procedures For The Sale Of Substantially All Of The Debtors' Assets, (C) Scheduling An Auction And Hearing To Consider The Sale And Approve The Form And Manner Of Notices Related Thereto, (D) Establishing

---

[1] The Debtors and the last four digits of their U.S. tax identification number are Arecont Vision Holdings, LLC (9187), Arecont Vision, LLC (1410), and Arecont Vision IC DISC (5376). The Debtors' noticing address in these chapter 11 cases is 425 Colorado Street, Suite 700, Glendale, CA 91205.

Procedures Relating To The Assumption And Assignment Of Certain Contracts And Leases, Including Notice Of Proposed Cure Amounts; (E) Approving Certain Breakup Fee And Expense Reimbursement Provisions; (II) Authorizing And Approving (A) The Sale Of Certain Assets Free And Clear Of All Liens, Claims And Encumbrances, And Other Interests, And (B) The Assumption And Assignment Of Certain Contracts And Leases; And (III) Granting Related Relief [Docket No. 62] (the "Motion") and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A. The Bankruptcy Case

1. On May 14, 2018 (the "Petition Date"), Arecont Vision Holdings, LLC and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. On the Petition Date, the Debtors filed the Motion.[2]

3. Pursuant to the Motion, the Debtors seek, *inter alia*, an order approving certain Bidding Procedures and the Debtors' Sale of Assets to Successful Bidder(s), Back-Up Bidders(s) or the Stalking Horse Purchaser.

4. The Debtors have not supplied any information in connection with the Motion or Bid Procedures that would allow an insurer, such as the Chubb Companies, to determine whether any coverage provided to the Debtors may be included as a part of any such Sale.[3]

---

[2] All capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

[3] Schedule 1.1(b) to the Stalking Horse Purchase Agreement is to itemize certain Excluded Contracts that are not to be transferred to the Purchaser in connection with the Sale; however, Schedule 1.1(b) is not attached to the Stalking Horse Purchase Agreement.

B. **The Insurance Program**

5.  Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors, as named insureds.

6.  Pursuant to other Policies (together with any agreements related thereto, the the "Insurance Program"),[4] the Chubb Companies provide, *inter alia*, automobile, customarq, excess, umbrella, workers' compensation, crime, directors' and officers' fiduciary liability and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (the "Obligations").

7.  The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## RESERVATION OF RIGHTS

8.  The Chubb Companies file this Reservation of Rights to the proposed Sale on the basis that (A) the Chubb Companies cannot determine how the Debtors propose to treat the Insurance Program in connection with the proposed sale of assets; (B) the Insurance Program must be assumed and assigned, if at all, as a whole; and (C) to the extent that the Debtors seek

---

[4] The description of the Insurance Program set forth herein is not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Program. Reference is made to the Insurance Program for a complete description of their terms and conditions.

3

to assume and assign the Insurance Program, the Insurance Program cannot be assigned without the consent of the Chubb Companies, which consent has not been sought or given. This Reservation of Rights is intended to place all bidders on notice as to the Chubb Companies' position with respect to any attempt to assume and assign any of the Policies.

### A. The Chubb Companies Cannot Determine How The Debtors Propose To Treat The Insurance Program.

9. The Motion and the Purchase Agreement provided in connection therewith do not clearly provide for any proposed treatment of insurance in connection with any proposed Sale.

10. Further, the Bid Deadline, Auction and Sale Hearing have yet to occur.

11. Accordingly, it is uncertain if the Debtors propose that any of the Policies (or any agreements related thereto) will be transferred to a Stalking Horse Purchaser or any Successful Bidder(s) in connection with any proposed Sale.

12. Based on this ambiguity, the Chubb Companies cannot determine with any certainty how the Debtors propose to treat the Insurance Program in connection with the proposed Sale and therefore reserve their rights to object to the proposed Sale on this basis

### B. The Insurance Program And The Obligations Thereunder Are Indivisible.

13. It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit

4

of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owner's Association, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere'"); *see also, In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder. 'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.' The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement.'") (internal citations omitted); *In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "(a)ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

14. Accordingly, any Successful Bidder cannot receive the benefits of the Insurance Program without remaining liable for the obligations thereunder.

15. Moreover, the Insurance Program, which is an integrated insurance program, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015)

DM3\5211968.1

(reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. at 202 (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

16. Accordingly, any assumption of the Insurance Program and the Obligations thereunder must be in its entirety, and the Chubb Companies further reserve their rights to object on this basis.

C. **The Insurance Program Cannot Be Assigned Without The Prior Written Consent Of The Chubb Companies, Which Has Not Been Given.**

17. To the extent that the Debtors seek to assign the Insurance Program, such assignment cannot occur without the express written consent of the Chubb Companies.

18. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

19. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without

the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

20. Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Program cannot be assigned without the prior, written consent of the Chubb Companies.

21. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment of the Insurance Program, the Debtors and any proposed Purchaser or assignee will be required to execute assumption agreements, in form and substance acceptable

---

[5] Some courts have found that insurance policies may be assigned to a trust created under § 524(a) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust"); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case involves neither an assignment to a trust created pursuant to § 524(a) nor an assignment under a plan.

7

to the Chubb Companies. As the ultimate proposed assignee is not yet known, this agreement has not yet been negotiated, let alone executed.

22. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Program, the Chubb Companies reserve their rights to object to any and all such assignments.

WHEREFORE, the Chubb Companies reserve their rights to assert all of the objections described above in connection with the Motion, and to assert any additional objections to the Motion and agreements related thereto, and the assignment of the Insurance Program, particularly once the ultimate purchaser is established, including, but not limited to, the right to assert that the Insurance Program must be assumed pursuant to § 365 of the Bankruptcy Code and the right to payment of any cure claim as of the closing date of the sale.

Dated: May 30, 2018

Respectfully submitted,

DUANE MORRIS LLP

By: /s/ Richard W. Riley
Richard W. Riley, Esq. (DE Bar No. 4052)
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: 302-657-4928
Fax: 302-657-4901
Email: rwriley@duanemorris.com

-and-

Wendy M. Simkulak, Esquire
Drew S. McGehrin, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: wmsimkulak@duanemorris.com
Email: dsmcgehrin@duanemorris.com

*Counsel for the Chubb Companies*