**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ARECONT VISION HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11142 (CSS)<br><br>Jointly Administered<br><br>**Related Docket Nos.: 62, 110, 114**<br>Hearing Date: July 10, 2018 at 2:00 p.m.<br>Objection Deadline: July 3, 2018 at 4:00 p.m. |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF**
**BSREP SOCAL GLENDALE LLC WITH RESPECT TO POTENTIAL ASSUMPTION**
**AND ASSIGNMENT OF UNEXPIRED LEASE AND PROPOSED CURE AMOUNT**

BSREP SoCal Glendale LLC (the "Landlord"), the landlord for the premises in which the Debtors' headquarters is located, hereby files this limited objection and reservation of rights (the "Limited Objection") with respect to the Debtors' potential assumption and assignment of the Lease (defined herein) and proposed Transition Services Agreement with respect to the Lease. In support of this Limited Objection, the Landlord relies upon and incorporates by reference the Declaration of Thomas Diamond attached hereto as Exhibit A (the "Diamond Declaration"), and, through its undersigned counsel, respectfully represents as follows:

**RELEVANT FACTS**

1. The Landlord and Debtor Arecont Vision, LLC (the "Tenant") are parties to that certain Standard Office Lease dated October 26, 2007 (as amended, modified, or supplemented from time to time, including by that certain Storage License Agreement dated December 19, 2012, collectively the "Lease"). Pursuant to the Lease, the Tenant leases certain premises, parking spaces and certain storage premises located at 425 East Colorado Boulevard, Glendale, California (collectively, the "Premises").

2. The Lease contains specific provisions regarding the assignment, sublease and license of the Premises.[1] Lease, Article 15. In summary, the Lease provides that the Tenant may not assign, transfer, sublet "or permit the Premises or any part thereof to be used or occupied by anyone other than Tenant or Tenant's employees without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed." *Id*. The Lease further provides that the Tenant may transfer its interest only upon certain conditions set forth in the Lease, including that "the proposed Transferee shall execute an agreement pursuant to which it shall agree to perform faithfully and be bound by all of the terms, covenants, conditions, provisions and agreements of this Lease applicable to that portion of the Premises so transferred". *See* Lease, § 15(c).

3. On May 18, 2018, the Debtors filed a motion (the "Motion") seeking, among other relief, authorization to enter into an asset purchase agreement (the "Stalking Horse APA") with Arecont Technologies LLC, an affiliate of Turnspire Capital Partners, LLC (the "Stalking Horse Purchaser"), for the sale of substantially all of the Debtors' assets, subject to higher and better bids. *See* Docket No. 62. The Stalking Horse APA, a copy of which is attached to the Motion as Exhibit C, contemplates a Transition Services Agreement (as defined in the Stalking Horse APA), which will provide for, among other things, "an arrangement pursuant to which Purchaser will, subject to paying all of Seller's rent, insurance, utilities, and other carrying costs attributable to such premises and other customary terms and provisions of such arrangements, be entitled to utilize Seller's Glendale, California facility for a limited period of time following the Closing (not to exceed ninety (90) days)". *See* Stalking Horse APA, § 5.5.

---

[1] As the Lease contains a confidentiality provision, a copy of the Lease has not been attached. However, if necessary, the Landlord will file a copy of the Lease under seal.

4. Through the Motion, the Debtors also seek an order approving the Debtors' assumption and assignment to the Stalking Horse Bidder (or other successful bidder) of certain executory contracts and unexpired leases.

5. On June 7, 2018, the Court entered an order granting the Motion in part and approving bidding procedures (the "Bidding Procedures Order"). *See* Docket No. 110. Pursuant to the Bidding Procedures Order, any objections to the assumption and assignment of an executory contract or unexpired lease, or to the Debtors' proposed cure amount with respect to such executory contract or unexpired lease, must be filed no later than July 3, 2018 at 4:00 p.m. (Eastern Time).

6. On June 8, 2018, the Debtors filed a *Notice to Counterparties to Executory Contracts and Unexpired Leases That May be Assumed and Assigned* [Docket No. 114] (the "Cure Notice"). The Cure Notice identifies the Lease and proposes a cure amount of $103,542. *See* Cure Notice, Exhibit A.

**LIMITED OBJECTION AND RESERVATION OF RIGHTS**

7. The Landlord is informed that the Stalking Horse Purchaser is interested in taking an assignment of the Lease on a modified basis. The Landlord and the Stalking Horse Purchaser are in the process of negotiating the terms of such modified Lease but negotiations will not be completed prior to the Landlord's deadline to object to the assumption and assignment of the Lease. If the Landlord and the Stalking Horse Purchaser reach an agreement on modified terms—including terms that will satisfy the Debtors' obligations to cure all defaults and provide the required compensation and the Stalking Horse Purchaser's obligation to provide to the Landlord adequate assurance of future performance—the Landlord will be supportive of assumption and assignment of the Lease, as so modified.

8. However, in the event the parties are unable to reach an agreement on the terms of a modified Lease, the Landlord respectfully requests an order denying the Debtors' motion to assume and assign the Lease, unless the Lease is assumed and assigned to the Stalking Horse Purchaser without any modification to the Lease, the Debtors pay all required cure and compensation amounts, and the Stalking Horse Purchaser provides adequate assurance of future performance under the Lease,[2] including by providing an adequate security deposit, letter of credit, third-party guarantees and/or any other form of security that is acceptable to the Landlord, as well as proof of insurance.

9. If an agreement on modified Lease terms is not reached, the Motion seeks to allow the Stalking Horse Purchaser to utilize the Premises pursuant to a Transition Services Agreement for 90 days following the closing of the sale while it transitions to a different location. As such a Transition Services Agreement is a license, the Landlord objects to such an arrangement without strict compliance with the Lease. The Landlord is amenable to negotiating an acceptable license agreement between the Landlord, the Debtors and the Stalking Horse Purchaser, which would allow the Stalking Horse Purchaser to remain in the Premises for such 90 day period, and the Landlord has provided a draft of such license agreement to the Stalking Horse Purchaser's counsel. The Landlord objects to any other arrangement—such as the Transition Services Agreement (a draft of which has not even been provided to the Landlord) described in the Stalking Horse APA—by which the Stalking Horse Purchaser will remain in the Premises after the closing of the sale, unless such arrangement (a) creates direct privity between

---

[2] The Landlord has received an adequate assurance package from the Stalking Horse Purchaser, but such adequate assurance, by itself, is insufficient. *See* Diamond Declaration (describing inadequacies in the information provided, including: (i) the Stalking Horse Purchaser will be a newly formed entity, without any operating history; and (ii) no information has been provided regarding the Stalking Horse Purchaser's opening balance sheet or projections.

the Landlord and the Stalking Horse Purchaser; (b) provides to the Landlord adequate assurance of future performance, including an adequate security deposit and proof of insurance as required under the Lease; (c) requires payment of all outstanding cure costs and all future obligations under the Lease; and (d) otherwise complies with terms of the Lease. Without these features, any arrangement allowing the Stalking Horse Purchaser to remain in the premises after the closing of the sale is a disguised assumption and assignment of the Lease, without affording the Landlord the protections of section 365 of the Bankruptcy Code, and should be prohibited.

10. In addition, to the extent the Debtors seek to assume and assign the Lease to, or to enter into the Transition Services Agreement or other arrangement with, any party other than the Stalking Horse Purchaser, the Landlord reserves all of its rights to object to such assumption and assignment or to such Transition Services Agreement or other arrangement, on any ground, including insufficient adequate assurance of future performance.

11. Moreover, the Landlord objects to the proposed cure amount for the Lease identified in the Cure Notice. *See* Cure Notice, Exhibit A. The amount identified in the Cure Notice, $103,542, is the amount outstanding for rent under the Lease for the month of May. However, pursuant to the Lease, the Landlord is also entitled to attorneys' fees "in connection with enforcing its rights under [the Lease] against the Tenant following a bankruptcy by Tenant . . .". Lease, § 30(b)(i). Since the Petition Date, the Landlord has incurred attorneys' fees of more than $30,000 in connection with enforcing its rights under the Lease related to the bankruptcy cases, and such fees continue to accrue. Such amounts must also be paid as a condition to approval of the assumption of the Lease.

12. The Landlord notes that of the $103,542 of rent due for May, $60,000.75 is "stub" rent for the period from May 14, 2018 (the Petition Date) through May 31, 2018. The

Debtors' DIP financing budget contains a line item for "Lease Rental Payments", which appears to contemplate a payment of stub rent during the first week of these Chapter 11 cases, *see* Docket No. 107, Exhibit C, but the Landlord has not yet received payment of such stub rent. Accordingly, the Landlord requests that the Court require the Debtors to pay such stub rent prior to or upon closing of the sale, whether or not the Lease is assumed and assigned.

13. Finally, the Landlord is a party to that certain Collateral Access Agreement with U.S. Bank National Association (the "Collateral Agent"), dated March 31, 2014 (the "Collateral Access Agreement") in connection with certain notes the Debtors issued to various noteholders. Pursuant to the Collateral Access Agreement, the Landlord subordinated its liens to any liens of the Collateral Agent in certain personal property located at the Premises and granted certain rights to the Collateral Agent to access the Premises in connection with exercising its rights against the Debtors. The Landlord requests, out of an abundance of caution, that any order approving the sale explicitly provide that following the sale the Collateral Access Agreement is deemed terminated.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Landlord respectfully requests that the Court grant to the Landlord the relief requested herein and such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: July 3, 2018<br>Wilmington, Delaware | PEPPER HAMILTON LLP<br><br>/s/ David M. Fournier<br>David M. Fournier (DE 2812)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, Delaware 19899-1709<br>Telephone: (302) 777-6500<br>Email: fournierd@pepperlaw.com<br><br>- and -<br><br>GOODWIN PROCTER LLP<br>Michael H. Goldstein *(pro hac vice* pending)<br>Barry Z. Bazian *(pro hac vice* pending)<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Tel: (212) 813-8800<br>Email: mgoldstein@goodwinlaw.com<br>    bbazian@goodwinlaw.com<br><br>*Counsel for BSREP SoCal Glendale LLC* |