**Exhibit B**

Transcript from <u>In re Real Industry, Inc</u>.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11
                                    .    Case No. 17-12464(KJC)
REAL INDUSTRY, Inc., *et al.*,      .    June 27, 2018 (10:03 a.m.)
                                    .    (Jointly Administered)
            Debtors.               .    (Wilmington)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT JUDGE

Appearances:

For the Debtors:            Teresa Currier, Esq.
                            Saul Ewing Arnstein & Lehr LLP
                            Jennifer Marines, Esq.
                            Mark Lightner, Esq.
                            Benjamin Butterfield, Esq.
                            Raff Ferraioli, Esq.
                            Morrison & Foerster LLP

For the U.S. Trustee:       Juliet Sarkessian, Esq.
                            U.S. Department of Justice

For the Creditors           Michael Lastowski, Esq.
Committee:                  Jarret Hitchings, Esq.
                            Duane Morris
                            Bennett S. Silverberg, Esq.
                            Brown Rudnick, P.A.

For Wilmington Trust:       Eric Lopez Schnabel, Esq.
                            Dorsey & Whitney

For Ad Hoc Holder Group:    Ted Dillman, Esq.
                            Latham & Watkins LLP

For Mergermarket:           Patrick Houlihan, Esq.
                            Merger Market

Audio Operator: Al Lugano
Transcriber:  Elaine M. Ryan
             (302) 683-0221

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE CLERK: All rise.  Please be seated.

2          THE COURT: Good morning, all.

3          ALL: Good morning, Your Honor.

4          MS. MARINES: Good morning, Your Honor.  Jennifer

5    Marines for Morrison & Foerster on behalf of the debtor.  Your

6    Honor, we only have one matter that's going forward on the

7    agenda today and that's with respect to the motion to dismiss.

8    As the Court knows, the debtors successfully sold their

9    ongoing operations and all of their assets to the pre-petition

10   lenders through a § 363 sale which closed on May 31st of this

11   year.  That sale allowed the business to continue

12   uninterrupted and also preserved nearly 2,000 jobs.  In

13   addition through what we've been calling the vendor outreach

14   program, if Your Honor will recall, a significant number of

15   vendors received payment in full on account of their priority

16   claims and many received distributions from the new owners on

17   account on account of general unsecured claims as well.  The

18   DIP financing has been satisfied and all that remains in the

19   estate is the final carve out as well as a modest amount of

20   case that's been escrowed to address any non-professional

21   costs . . . (indiscernible) of the estate which is state

22   filing fees.  The buyers have a reversionary interest in those

23   funds so anything that is not spent in connection with the

24   wind-down goes back to the purchaser.  Because there are no

1    remaining assets, there will be no distributions from the

2    estate on account of any pending claims and so the sole

3    remaining task of the estate is to: one, resolve the corporate

4    entities, and two, exit these cases in the most cost-efficient

5    manner possible.  So with that background, Your Honor, the

6    debtors submit that there is more than sufficient cause under

7    § 1112 before to dismiss the cases, and I don't think that

8    anyone here today has questioned that assertion.  There has

9    been one limited objection that was filed by the United States

10   Trustee and that was solely with respect to the exculpation

11   that we are requesting.  So, just to address that objection, I

12   would like to make a few points about the limited nature of

13   what we are requesting because I think it's important.  First,

14   Your Honor, exculpation is limited to a state fiduciary that

15   includes the directors and officers who served during the

16   course of the case.  It includes the individual members of the

17   Creditors Committee and it also includes the professionals

18   that were retained by the debtors and the Creditors Committee.

19   These parties are all the state fiduciaries who performed

20   necessary and valuable duties during the course of the cases.

21   Second, Your Honor, exculpation is limited to acts and

22   omissions that were taken post-petition and in connection with

23   the bankruptcy itself.  So, we are not seeking to release any

24   pre-petition claims or any claims that were for acts or

25   omissions not related to the bankruptcy.  And third, Your

1   Honor, the proposed exculpation is consistent with the

2   standard of care that's expected of the exculpated parties who

3   had the standard carve-out for actions of fraud, wilful

4   misconduct, and gross negligence, and we are only seeking

5   exculpation in connection with acts that the exculpated

6   parties took that were made in good faith.  So the debtors

7   bemused that the proposed exculpation is narrowly tailored,

8   consistent with some of our provisions that have been approved

9   by the Court and justified by the particular facts and

10  circumstances of this case.  And we also believe that there's

11  nothing in the Bankruptcy Code that prohibits exculpation in a

12  context of a structured dismissal.

13        THE COURT: But nothing that expressly gives you a

14  hook to hang this on.

15        MS. MARINES: Well, that may be the case, but we do

16  believe that the case law suggests that when law imposes a

17  duty on particular parties, such as under §§ 1103, 1106, and

18  1107 then the law should also grant some kind of a qualified

19  immunity to those parties in connection with discharging those

20  duties.  And, we think that that should apply in any context

21  and when fiduciaries who've performed valuable duties to the

22  estate, such as here, do so in the context of a structured

23  dismissal, we don't believe that it means that they're any

24  less - they should not receive the same protections as in a

25  plan scenario.

1          THE COURT: Who received notice of this motion?

2          MS. MARINES: So that's another factor.  There were

3     9,000 people who received notice of our request.  Oftentimes

4     plans are solicited to the 2002 list.  Here, we did the entire

5     creditor matrix.  In addition, the relief requested was made

6     express.  Not only was it one of the enumerated reliefs

7     requested in the relief requested section, but it was also in

8     the title of the motion, and I think that it was quite

9     discernible in the final dismissal order which was 5 pages,

10    double spaced, and I think 10 or maybe 12 paragraphs.  So, it

11    was clear, and notably, Your Honor, not a single person who

12    would be affected by the exculpation filed an objection.  The

13    sole objection that we received was from the United States

14    Trustee.  Finally, Your Honor, similar exculpation provisions

15    have been approved in the context of a structured dismissal in

16    this district.  We understand that those are not precedential,

17    but we do believe that they suggest that under the appropriate

18    facts and circumstances, that exculpation can and should be

19    permitted.  And I would submit that those facts and

20    circumstances exist, particularly in this case.

21         THE COURT: Thank you.  Does the Committee wish to be

22    heard?

23         MR. LASTOWSKI: Good morning, Your Honor.  Michael

24    Lastowski of Duane Morris LLP here today on behalf of the

25    Committee.  With me is my colleague Jarret Hitchings and on

1    the phone is my co-counsel, Ben Silverberg.  Your Honor, we

2    join in and adopt the debtors' arguments in favor of the entry

3    of their proposed order.  Generally and specifically we join

4    in and adopt their arguments related to the inclusion into

5    that order of a - what we've been referring to as the

6    exculpation provision.  On behalf of the Committee and its

7    professionals, however, I'd like to make a further statement

8    in support of exculpation of those parties.  As Your Honor

9    knows, in PWS Holding Corporation, the Third Circuit reviewed

10   an exculpation provision and specifically reviewed a fact

11   occasioned to a Committee and its professionals.  Turning to

12   Code § 1103(c), the Third Circuit noted two things, that that

13   section has an implied fiduciary duty upon the Committee and

14   its members on the one hand, but on the other hand, lost it on

15   the high potent standard of liability for their acts taken as

16   Committee members during the course of the case, and that

17   heightened  standard of liability is a language that is

18   incorporated in exculpation clauses.  The other is its own

19   liability for gross negligence or wilful misconduct.  To the

20   extent that if policy must be articulated in support of that

21   interpretation, one is easily stated.  The members of the

22   Committee were involuntarily - the creditors of the debtor

23   involuntarily become creditors of - Well, pre-petition, they

24   were creditors of a non-debtor.  Post-petition, they became

25   creditors of the debtor and among that creditor body a few

1   elected to serve on the Committee, and again, by doing so,

2   they assume a fiduciary duty but in exchange they do have this

3   heightened standard of liability.  The policy, at a minimum,

4   is to encourage creditors to serve on committees provided this

5   happens so that the liability serves that purpose and I think

6   the Third Circuit's reasoning is the way they justified.  I

7   would note that in its objection, the Office of the United

8   States Trustee does acknowledge the holding in the holding's

9   case which seeks to distinguish it on the grounds that in that

10  case the Court of Appeals was reviewing a confirmation order.

11  In other words, there's a confirmed plan.  Here we don't have

12  a confirmed plan and hence the distinction.  I would urge the

13  Court to find that this is a distinction without a difference.

14  The Committee is a . . . statute.  The United States Courts of

15  Appeal in reviewing the statute, it would limit the committee

16  duties, articulated this heightened standard of liability

17  generally.  There's nothing in that decision that could be

18  interpreted as restricting the holding to confirm plans.  So

19  in conclusion, Your Honor, we're in favor of the order that's

20  been submitted to the Court, the proposed order.  Generally,

21  we're in favor of the exculpation clause and we think that

22  there are specific arguments in favor of exculpating both the

23  Committee and its professionals.  Thank you.

24          THE COURT: Thank you.  I'll hear from the U.S.

25  Trustee.

1       MS. SARKESSIAN: Thank you, Your Honor.  Juliet
2   Sarkessian for the U.S. Trustee.  Your Honor, I would like to
3   respond to a number of points that the debtors raised in their
4   reply to the U.S. Trustee objection.  The debtors state that
5   there is ample authority for the limited objection sought in
6   their dismissal motion.  And while there is authority, that's
7   all in connection with Chapter 11 plans.  The debtor has not
8   cited any written opinion that permits an exculpation either
9   in a dismissal order or anyplace other than in a plan.  And in
10  fact, the debtors' quote in their reply from the Third
11  Circuit's opinion in PWS reenforces this.  There the Court
12  state that, quote - the Court allowed the exculpation in the
13  context of a Chapter 11 plan, stating, quote, "It sets forth
14  the appropriate standard of liability that would apply to the
15  actions against the Committee members and entities that
16  provide services for the Committee in the event that they were
17  sued for their participation in the reorganization."  To time
18  that to the reorganization here, there is no reorganization.
19  The only other thing that the debtors cite to in support of
20  their position that exculpation causes can be included in
21  dismissal orders are three orders entered by this Court over a
22  period of five years.  Two of those orders predate the Supreme
23  Court decision in Jevic, which I think is fair to say has had
24  an effect on what is being included in dismissal orders going
25  forward.  The third order which is in Golfsmith merely

1   repeated certain consensual releases between the debtors and

2   the landlords that were separately documented through other

3   stipulations, and that is in fact reflected in a footnote in

4   the order.  In these three cases that the debtors rely on,

5   there's no written opinion and the same is true with respect

6   to the case that we referenced, Judge Gross's ruling from the

7   bench in Sunco back in August of 2017 where Judge Gross

8   sustained the U.S. Trustee's objection to an inclusion on an

9   exculpation clause in a dismissal order.  We referenced that

10  order only because the debtors are relying on an earlier 2013

11  order from Judge Gross in the Coach case and Sunco is a much

12  more recent ruling from Judge Gross.  The debtors argue that

13  the exculpation provision in Sunco was more expansive than the

14  one that's here, but the differences are actually very minor.

15  There, the Sunco exculpation was limited to a state

16  fiduciaries except there were two categories that were perhaps

17  over-broad, agents and employees that could include both

18  fiduciaries and non-fiduciaries.  And while the exculpation

19  did not expressly state it was limited to post-petition

20  actions, it stated it was limited to actions, quote, "related

21  to the Chapter 11 cases", close quote.  Morever, Judge Gross

22  did not indicate that his ruling was based on the exculpation

23  provision being too broad or covering non-fiduciaries, but

24  rather, there was, quote, "no disclosure statement, no plan,

25  no vote by creditors on the dismissal, and no consideration

1    being paid to unsecured creditors," close quote.  That's from

2    the August 16, 2017 transcript in Sunco.  Now the debtors

3    argue that in contrast to Sunco, in this case there has been

4    consideration paid to unsecured creditors.  However, that's

5    only true with respect to unsecured trade creditors, non-trade

6    creditors received nothing as part of the sale, and even with

7    respect to the trade creditors, to the extent they had general

8    unsecured claims, they only got paid if they agreed to give

9    certain credit terms to the buyer, and if that happened, there

10   was some portion of their claim that the buyer paid.  The

11   debtor also goes through the elements in Continental Airlines

12   stating that that supports having an exculpation here.  In

13   Continental Airlines, the Third Circuit stated that releases

14   could be allowed where they are a, quote, "necessity to the

15   reorganization", close quote, and are, quote, "given in

16   exchange for fair consideration", close quote, and where there

17   are special factual findings to support these conclusions.  As

18   to necessity of the reorganization, obviously there's no

19   reorganization here, so that's not met.  And also, the

20   exculpation's not necessary to the dismissal of the cases, and

21   if you take it out, you can still have a dismissal.  Nor is

22   there any consideration being given for the exculpation.  The

23   debtors take the position that the debtors and its D's and O's

24   and professionals and the Committee and their professionals

25   contributed, quote, "considerable time, effort, and attention

1    to these cases", close quote.  That may be true, but all of

2    the professionals in these cases are well-compensated for

3    their time and effort.  The debtors' officers not only

4    received their salary but they were also eligible for generous

5    post-petition bonuses which presumably they received.  The

6    only parties here to be exculpated that are not being

7    compensated for their time are the members of the Unsecured

8    Creditors Committee and the debtor expresses a fear, and I

9    believe Committee counsel would have suggested as well, that

10   perhaps in the absence of having the exculpations and

11   dismissal orders that unsecured creditors would be reluctant

12   to sign up to be a member of the Committee.  But this ignores

13   the fact that the vast number of dismissal orders in this

14   District do not include releases or exculpations and our

15   office, the U.S. Trustee's office, generally does not have a

16   problem forming committees in most Chapter 11 cases in this

17   district.  So we certainly don't see any impact in that

18   fashion.  The debtors also assert that the estate fiduciaries

19   have qualified immunity for the acts taken in good faith, and

20   if so, that immunity can be asserted as a defense if someone

21   were to assert a claim against these fiduciaries, but merely

22   having a defense to a claim, does not necessarily entitle

23   someone to also get an exculpation.  And the debtor makes a

24   similar argument that the exculpation should be permitted

25   because all significant actions in the Real Alloy cases, other

1  than those that were in the ordinary course of business, were

2  done pursuant to orders of the Court.  Well, first the

3  proposed exculpation doesn't carve out ordinary course of

4  business, and it's not limited to things that were approved by

5  Court order, but even if that were the case, such approval -

6  just because the Court approves something does not

7  automatically entitle everyone who has something to do with

8  that order to get an exculpation.  Rather, it creates a

9  defense of a qualified immunity.  In fact, the debtors argue

10  in the reply that, quote, "Even in the absence of a limited

11  exculpation, the *res judicata* effect of the Court's orders

12  would provide the Real Alloy debtors and their principals with

13  a robust defense against future causes of action brought in

14  relation to the most significant occurrences in the Real Alloy

15  cases provided there was no showing of fraud or intentional

16  wrongdoing." close quote.  With such a robust defense

17  available, there is no need for an exculpation.  Moreover,

18  having an exculpation is not - it's not an injunction, it's

19  not a guaranty that no suits will be brought against state

20  fiduciaries because there is the exception for gross

21  negligence and intentional misconduct, which certainly could

22  be the subject of litigation.  Finally, the debtors argue that

23  there is no reason to believe that the protection provided by

24  an exculpation is unnecessary or unwarranted here.  That flips

25  the burden of proof.  As a proponent of the exculpation, the

1   debtors and the Committee need to establish that the

2   exculpation is necessary and warranted, as well as being

3   permissible under applicable law to be included in the

4   dismissal order, and the debtors have not succeeded on either

5   front. Your Honor, unless you have any questions, my argument

6   is completed.

7           THE COURT: I don't, thank you.

8           MS. SARKESSIAN: Thank you, Your Honor.

9           THE COURT: I'll give the debtor the last word.

10          MS. MARINES: Thank you, Your Honor. So, I just want

11  to start by discussing the Sunco case because we do believe

12  that that was a significantly different case, and we were

13  involved in that case on behalf of the debtors. The relief

14  being sought was significantly broader. It did include non-

15  estate fiduciaries like employees in Egin (phonetical), and it

16  was for all acts and omissions related to the case including

17  those taken pre-petition, but the language that was requested

18  that was denied by Judge Gross said that it was for any act or

19  omission taken in connection with a Chapter 11 case. So all

20  of the pre-filing activities, looking for DIP financing,

21  everything was intended to be covered by that exculpation

22  clause. And also, while Sungevity was this case, included a

23  Section 363 sale followed by a dismissal, it was very

24  different. Sungevity, the priority wage claims were the

25  fulcrum security. General unsecured claims did not get any

1   distribution and priority tax claims didn't get paid in full.
2   There were massive layoffs in that case, and in fact, if I
3   recall, I think that unfortunately more employees were laid
4   off than retained by the new owners, and the Court was
5   certainly concerned in that case that the dismissal order had
6   not been served on all creditors.  Also, over 30 creditors in
7   that case did object to the dismissal order.  And Judge Gross
8   in that case found that, based on the facts and circumstances
9   of that case, that exculpation was unwarranted and he said,
10  Exculpation could be warranted in other circumstances, but
11  Sungevity was not the case.  The first step to the U.S.
12  Trustee's argument that there's no reorganization here, I
13  would submit that the outcome of any Chapter 11 case is
14  inherently unpredictable.  We started this case with a robust
15  marketing process and we certainly hoped that there would be
16  more cash in the estate to make distributions and exit these
17  cases with a plan of reorganization, but it was unpredictable
18  that this would end up with a structured dismissal, and we
19  decided to pursue this right after considering various
20  alternatives because simply there was no money in the estate
21  and the only people who would have benefitted from a Chapter
22  11 plan would be the professionals getting paid more money.
23  Also, Ms. Sarkessian said that non-trade creditors in this
24  case did not get a distribution, and that is the case, it's
25  part of the sale construct, but those creditors all received

1   notice and not a single one objected to the motion to dismiss

2   or the exculpation.  We also cited <u>Continental</u>, which Ms.

3   Sarkessian raised and we cited that case to the extent that

4   this Court thought that the exculpation we were seeking was a

5   release, and we wanted to make sure that we walked through

6   those factors but we do not believe that this is a release.

7   We believe that this is a restatement of what the standard of

8   care is.  And finally, Your Honor, what we're asking here is

9   really for an order that crystalizes what we believe the

10  exculpated parties already have and Ms. Sarkessian made that

11  point as well.  But D&O insurance is not always a given, and

12  it requires an extraordinary amount of negotiation with your

13  insurance providers.  It also does not stop people, just

14  because there had been orders in this Court that were entered,

15  it does not stop people from brining lawsuits.  We believe

16  that exculpation as part of a final dismissal order will act

17  as a deterrent, an additional deterrent from people bringing

18  suit against the fiduciaries in this case and formalize all of

19  the Court order that came before.  Thank you, Your Honor.

20          THE COURT: Thank you.  Well - Yes, Mr. Lastowski?

21          MR. LASTOWSKI: May I have two minutes, Your Honor?

22          THE COURT: Yes, you may.

23          MR. LASTOWSKI: Just very briefly, I'd like to

24  address the arguments made by the Office of the United States

25  Trustee.  There was mention in that argument of language in

1    PWS where the Court said it was articulating some of the

2    liability relating to a committee performing its role in a

3    reorganization case.  And I think if you really look at the

4    language there, it could have easily said the Chapter 11 case,

5    there's nothing in that decision that suggests, again, that

6    there had to be a reorganization.  And I would note too, why

7    should the Committee's exculpation depend upon a

8    reorganization?  Why should the committee's exculpation depend

9    upon a debtor's success in a case when the committee doesn't

10   control the case.  As the U.S. Trustee acknowledged, the

11   committees aren't compensated, they should be incentivized to

12   become committee members, although it was noted that

13   committees are regularly performed in this district even

14   though there are dismissal orders entered without exculpation.

15   In most cases you don't know how the case is going to turn out

16   and the committee is going to go in not knowing what the

17   outcome may be.  And finally, you know, with regard to the

18   standard of liability, most companies that file here are

19   Delaware corporations.  The officers and directors get the

20   benefit of the business judgment rule.  Again, the committee

21   is a creature of statute and to get the parallel to the

22   business judgement rule, you have to imply in 1103(c) the

23   standard of liability articulated by the Court in PWS.  Thank

24   you.

25              THE COURT: Thank you.

1     maximize the assets of the estate and to make the best of what

2     was obviously not an ideal situation.  So, for all of those

3     reasons, I'm going to overrule the U.S. Trustee's objection

4     and sustain and approve the motion and the relief that the

5     debtor has requested.  Do you have a form of order for me?

6            MS. MARINES: I do, Your Honor.

7            THE COURT: And does the U.S. Trustee have any

8     comments about the proposed form of order?

9            MS. SARKESSIAN: Your Honor, if it's the same as the

10    one that I signed off on, I would just like to take another

11    look.

12           MS. MARINES: It is, Your Honor.  There is a minor

13    redline, which I'll hand up and I'll hand to Ms. Sarkessian.

14           THE COURT: Thank you very much.

15           MS. MARINES: Your Honor, we were advised not to file

16    a redline unless everything was resolved, but I think it was

17    part of the hearing today so that's why we're handing this up.

18    But can I just walk through the minor changes?

19           THE COURT: If you please.

20           MS. MARINES: Okay.  So, the first change - or,

21    actually it's only a change with respect to paragraph (6) of

22    the initial order, and the changes are twofold: One, to make

23    it clear that nothing in the dismissal order overrides the

24    requirement in the sale order or the APA with respect to

25    purchaser distributions to trade creditors under the vendor

1      outreach program.  The APA had said that prior to dismissal,

2      initial distributions have to have been made and we're just

3      restating that in that.  The second is at the request - and

4      this is kind of at the bottom, this is the last sentence in

5      the redline at the bottom of paragraph (6), at the request of

6      the U.S. Trustee, we agreed to provide a status of any pending

7      administrative claims as of the dismissal date of the

8      certificate of counsel.

9              THE COURT: All right, I see that.  Ms. Sarkessian,

10     any comments about those alterations?

11             MS. SARKESSIAN: No, Your Honor, we have no objection

12     to those alterations.

13             MR. SCHNABEL: Good morning, Your Honor.  For the

14     record, Eric Lopez Schnabel, of Dorsey & Whitney.  I represent

15     Wilmington Trust who's the pre-petition notes indentured

16     trustee.  We had some language that we had talked to the

17     debtors and the U.S. Trustee in connection with the dismissal,

18     and what we're actually going to do is file a separate motion

19     for that and put it on for the August 3rd hearing, and what I

20     just want to give you a preview of what we're concerned about,

21     I would like to have some finality and is, as an indentured

22     trustee, as a collateral agent of the pre-petition notes and

23     the rollover notes which were approved through the DIP order,

24     we're in possession of certain property of the estate, stock

25     certificates and other items that are part of the collateral,

1     and once the debtors are dissolved, you know, what do we do

2     with that?  What do we do with those documents and so forth?

3     What do we do with the indenture itself?  So, the language

4     that we had circulated amongst the parties is to kind of give

5     some instruction to us to either - authority to destroy those

6     things because they are property of the estate technically or

7     to turn them over to debtors' counsel and let them frame them

8     or something like that or do what have you.  So, we have some

9     language related to that but in talking with the U.S. Trustee,

10    we thought we'd put that in a separate motion and notice that

11    out to all parties under 2002, but more especially the

12    noteholders themselves and put that on for the August 3rd

13    hearing.

14              THE COURT: But you have no objection to the entry of

15    this order?

16              MR. SCHNABEL: We have no objection.  It's more of a

17    - as a consequence of the entry of that order, we would want

18    an order from Your Honor and we'll want that obviously - an

19    opportunity to have that considered and if Your Honor approves

20    to have it entered before the actual dismissal and the case

21    closing.

22              THE COURT: All right, thank you.

23              MR. SCHNABEL: Thank you, Your Honor.

24              THE COURT: That order has been signed.  Is there

25    anything else that we need to talk about today?

1    MS. MARINES: No, Your Honor, that's it.  Thank you.

2    THE COURT: Thank you all very much.  That concludes

3 this hearing.  Court will stand in recess.

4    (Whereupon at 10:35 a.m. the hearing in this matter

5 was concluded for this date.)

6

7

8

9

10

11

12

13

14

15

16

17

18    I, Elaine M. Ryan, approved transcriber for the United

19 States Courts, certify that the foregoing is a correct

20 transcript from the electronic sound recording of the

21 proceedings in the above entitled matter.

/s/ Elaine M. Ryan          June 28, 2018
Elaine M. Ryan
2801 Faulkland Road
Wilmington, DE 19808
(302) 683-0221